127 457
51a 230
127 457
54a 288

JOHN TITLEY *et al.*

*v.*

THE ENTERPRISE STONE COMPANY.

*Filed at Ottawa January 25, 1889.*

1. CONTRACT OF SALE—*non-delivery of proper quantity—recoupment —upon what basis.* In an action to recover the balance of the price of stone delivered under a written contract, the defendant, who was a dealer in stone, attempted to recoup damages for a neglect to furnish the amount of stone contracted for, and offered to prove that had more stone been delivered during a time named, it could have been sold, which the court refused to allow, stating that defendant might prove "that there was a strong demand during that time, and whether defendant was able to supply that demand :" *Held,* that the court ruled correctly, as what could have been sold was purely conjectural, and the inquiry should have been limited to the facts,—the extent of the demand at the time, and the defendant's ability, with the rock delivered, to meet that demand.

2. SAME—*inferior quality of article delivered—liability of seller.* Under a contract for the sale of rubble stone, to be taken from the vendor's quarry and delivered at a future day, the purchaser having previously bought such stone, to entitle the latter to recover damages for the inferior quality of the stone delivered, there must be proof either of an express warranty or of fraud. In such case there will be no implied warranty, and the rule of *caveat emptor* applies.

3. Where the purchaser of stone from a certain quarry is acquainted with the quality of such stone, there will be no implied warranty of its quality, and in an action by the vendor to recover the price of stone delivered, the defendant will not be prejudiced by an instruction telling the jury, in effect, that if he accepted the stone after an opportunity to inspect the same, he will be bound by such acceptance.

4. SAME—*waiver of objection to quality of article sold.* Where the quality of the article bought and delivered under a written contract does not correspond with the stipulations of the contract, the purchaser should make his objection thereto at the time of the delivery; and if he fails to object to the same, he will be deemed to have waived all objection as to its quality.

5. SAME—*written contract to control.* Where a contract for the sale and delivery of an article is in writing, the courts must look to the writing alone for its terms, in the absence of fraud.

6. INSTRUCTION—*when unnecessary, its refusal no error.* In an action to recover the unpaid price of stone sold and delivered, some payments having been made, the court instructed the jury, that after having ascertained, from the evidence, what the stone which was actually delivered amounts to, they should deduct from that sum the payments, and damages sustained by the defendant, and give a verdict for the balance, and said nothing about any interest. The defendant asked an instruction to the effect that the plaintiff was not entitled to interest, which was refused: *Held,* no error in refusing the same, as it was wholly unnecessary.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN P. ALTGELD, Judge, presiding.

Appellee sued appellants in assumpsit, in the Superior Court of Cook county, for the price of stone delivered under a contract, of which the following is a copy:

"CHICAGO, *March 20, 1885.*

"It is hereby agreed between Enterprise Stone Company of Chicago, Illinois, and J. & J. Titley, of the same place, that for the sum of seven dollars per cord, and the use of a derrick to unload same, provided there are two derricks on dock, Enterprise Stone Company will deliver on dock, at said J. & J. Titley's, on the east side of the West Branch of the Chicago river, at Division street bridge, between the opening and close of navigation, from their quarry, in the season of 1885, at the rate of from one to two boats per day, of twenty-three to twenty-four cords each, three thousand cords of rubble stone, more or less; and that J. & J. Titley agree, on or before the first day of each month, to pay at least three-fourths of all stone delivered up to and including the last day of the previous month, and the balance between the tenth and last of the month. And the said J. & J. Titley bind themselves to receive stone from no other parties until the amount herein agreed upon shall have been delivered by Enterprise Stone Company; and they further bind themselves to pay all charges for transferring boats from their dock to any other, if they

are required to be so transferred through any neglect on their part—such as failure to give notice that they can not receive stone, etc.

> ENTERPRISE STONE COMPANY,
> By M. B. Madden, *Sup't.*
> J. & J. TITLEY."

The general issue was pleaded, and upon the trial there were controverted questions of fact: First, whether plaintiff delivered stone at the time required by the contract; second, whether plaintiff delivered the amount of stone for which it rendered bills; and third, whether the stone delivered by plaintiff was of a quality equal to that required by the contract.

There was evidence tending to prove that plaintiff quit delivering stone at the request of defendants; that the defendants had an opportunity to inspect the stone as delivered, and made no objection to it, but thereafter sold considerable portions of it on the market; that after the last delivery of stone, defendants made payments on the bill, and upon a bill showing the balance due being presented, they made no objections, but frequently promised to pay it.

Both parties asked instructions, which the court refused to give, but the judge, of his own motion, gave the following in lieu of all instructions asked on both sides:

"1. In this case the plaintiff seeks to recover for a balance due for stone claimed to have been delivered under the contract read in evidence. The defendants resist payment, and allege that the plaintiff did not deliver the stone at the time required by the contract, by reason of which the defendants were damaged, in consequence of a fall in the price of stone. The defendants also allege that the plaintiff did not actually deliver the amount of stone for which it rendered bills; also, that the quality of the stone delivered by the plaintiff was not equal to that required by the contract, and that in consequence thereof the defendants were damaged; and the defendants seek to recoup all the damages they claim to have thus sustained for the amount which may be coming to the plaintiff.

"2.   You are instructed, as a matter of law, that the plaintiff must establish 'every material part of its case by a preponderance of the evidence, and upon all points material to the plaintiff's case, on which the evidence does not preponderate in favoring the plaintiff, the jury must find for the defendants.   If, therefore, you believe, from the evidence, that the stone delivered by the plaintiff to the defendants was delivered under the contract read in evidence, and was of the quality called for by said contract, or was accepted by the defendants after an opportunity to inspect it, then you will ascertain, from the evidence, the amount that the stone so actually delivered come to, at the price fixed by the contract. In determining the amount of stone actually delivered, you are not limited to the amount stated in the bills furnished, but you will determine, from all the evidence in the case, the amount of stone actually delivered.   After determining what the stone actually delivered come to, at the contract price, you will determine, from the evidence, whether the stone was delivered at the time required by the contract, and if not, whether the defendants suffered any damage in consequence thereof, and you will give the defendants credit for such damage, if any.   You will also determine, from the evidence, whether the stone actually delivered was of the quality called for under said contract, or whether it was accepted as being in accordance with said contract, and if it was not, then you will determine, from the evidence, whether the defendants suffered any damage in consequence thereof, and what it was, and give the defendants credit therefor.   After having ascertained, from the evidence, what the stone which actually was delivered amount to, and deduct from such amount the damage sustained by the defendant, if any, you will return a verdict for the plaintiff for the balance due plaintiff.   If not, they will find a verdict for the defendants."

The jury found for the plaintiff, and assessed its damages at $5000.   Defendants made a motion for a new trial, which

the court overruled, and judgment was then rendered upon the verdict. That judgment was affirmed on appeal to the Appellate Court for the First District, and the defendants have again appealed, bringing the case to this court. Errors are assigned, presenting the questions passed upon in the opinion.

Mr. JAMES FRAKE, for the appellants:

Appellee knew that the stone was purchased for re-sale on appellants' dock at retail, hence the damages for not supplying appellants was the difference between the price they were to pay and the price at which they could have sold the stone. *Thorne* v. *McVeagh*, 75 Ill. 81; *Railroad Co.* v. *Cobb*, 64 id. 141; *Crabtree* v. *Kile*, 21 id. 180; *Griffin* v. *Colver*, 16 N. Y. 489; *Missmon* v. *Shot and Lead Co.* 40 id. 422.

This loss was not only the direct, but the immediate and necessary, result of the breach of the contract in not delivering the goods. *Van Arsdale* v. *Rundel*, 82 Ill. 64.

The court told the jury, that if appellants accepted the stone after an opportunity to inspect it, they should be charged with the contract price. This might be good law where the purchaser had an opportunity to inspect the goods at the time of sale, but, as in this case, where they did not have, and the contract is an executory contract of sale, there is an implied warranty that the stone would be of fair merchantable quality, in good condition, and, notwithstanding the appellants accepted this stone, they would still have the right to rely upon the warranty implied by law, in mitigation of damages, under the general issue,—or, in other words, would only be liable upon a *quantum meruit* for the stone. *Doane* v. *Dunham*, 65 Ill. 517; *Babcock* v. *Trice*, 18 id. 420; *Misner* v. *Granger*, 4 Gilm. 69; *Howard* v. *Hoey*, 23 Wend. 350; *Manufacturing Co.* v. *Kasyezyki*, 18 App. 626; *Owens* v. *Sturges*, 67 Ill. 367; *Fish* v. *Roseberry*, 22 id. 288.

Mr. JOHN C. SCOVEL, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

During the progress of the trial, appellants' counsel proposed to prove, but was denied the right to do so by the trial court, that had more stone been delivered during a time named, it could have been sold. The court informed the counsel that he was at liberty to prove "that there was a strong demand during that time, and whether defendants were able to supply that demand." This ruling is now insisted upon as ground of reversal. We think the trial court was right. What *could have been* sold is purely conjectural. The inquiry should have been limited to the facts, the extent of the demand at the time, and the ability of the defendants, with the rock that was delivered to them, to meet that demand.

It is next objected, that the court erred in its second instruction, in telling the jury, in effect, that if the defendants accepted the stone after an opportunity to inspect them, they are bound by that acceptance. The objection is not tenable. The instruction, under the evidence before the jury, could not have prejudiced appellants' rights. The contract between the parties being in writing, we must look to the writing alone for its terms. On doing so, we find that the contract is for the sale of "rubble stone, to be delivered at a future day, from appellee's quarry." From this it is assumed, manifestly, that the quality of that stone was as well known to appellants as to appellee, for it is an existing article specifically described by the parties; and it was, moreover, expressly testified by appellants' managing partner, and contradicted by no one, that appellants had previously dealt in this stone. To enable the purchaser, under such a contract, to recover damages for the inferior quality of the article delivered, there must be proof either of an express warranty or of fraud, neither of which was claimed on the trial. There was no implied warranty of the quality, and the rule *caveat emptor* applies. *Towelles et al.* v. *Gatewood*, 2 Scam. 22; *Misner* v. *Granger*, 4 Gilm. 74;

2 Kent's Com. (8th ed.) 618, *478, *et seq.;* 1 Smith's Lead. Cases, part 1, p. 308, *et seq.;* Benjamin on Sales, (1st Am. ed.) 442, *et seq.;* Biddle on Warranties, sec. 141. If the quality delivered did not correspond with the stipulation of the contract, the objection should have been made known at the time, and this not having been done, the objection is deemed to be waived. *Dutchess County* v. *Harding,* 49 N. Y. 323; *Thompson* v. *Libby,* 35 Minn. 443; 2 Kent's Com. (8th Am. ed.) 622, *480.

In *Babcock* v. *Trice,* 18 Ill. 420, the sale was of corn, generally. The seller knew, from the character of the transaction, that merchantable corn was expected, and the purchaser could not know what corn would be delivered. In *Thorne* v. *McVeagh et al.* 75 Ill. 81, there was no opportunity to inspect the quality of the hams when purchased, and there was an express warranty of their quality.

There is no support in the evidence for the position that this rubble stone was for a particular use, knowledge whereof was communicated to appellee at or before the making of the contract, so as to make *Crabtree* v. *Kile,* 21 Ill. 180, *Illinois Central Railroad Co.* v. *Cobb, Christy & Co.* 64 id. 141, and other cases announcing like rulings, cited by counsel for appellants, applicable.

The only remaining objection presenting any question of law is, that the court erred in refusing appellants' fifth instruction, to the effect that appellee was not entitled to recover interest. Since the court instructed the jury "that after having ascertained, from the evidence, what the stone which was actually delivered amounts to, and deduct from such amount the damages sustained by the defendant, if any, you will return a verdict for the plaintiff for the balance due plaintiff," and they are nowhere told that plaintiff is entitled to recover interest, it is manifest that this instruction was wholly unnecessary, and its refusal did no harm.

The judgment must be affirmed.

*Judgment affirmed.*